Good morning, Your Honors. Jason Carr, Assistant Federal Public Defender from the District of Nevada, on behalf of Appellant Jermaine Smith. Good morning. Good morning. Just a brief amicus comment. In the District of Nevada, I've never heard of anybody forcing somebody to cooperate upon pain of an 851. And what a horrible, horrible practice that is. Not common. At any rate, back to Jermaine Smith. This is a case that really gets into what are the terms and parameters of a consensual encounter. And there's a lot of significance to that point. And one of the first points is sort of taking things out of order, is that that distinguishes this case from a case like Garcia, which involves automobiles, and the other automobile cases, which state that if you're in an automobile and you stop and then flee, that there's never been an actual seizure. And that makes a lot of sense. If we don't, do we have to agree with you that there was a seizure for you to prevail? Yeah, there has to be a seizure, yes. All right. So if the court were to conclude, and I'm not speaking from any, this is just a hypothetical, if we were to conclude that the initial contact was not a seizure, do you lose then? The case becomes much more difficult, yes. Under Illinois v. Ward law, a headlong flight is a cognizable factor. All right. So it really, from your perspective, focuses on that there has to be a seizure. Right. The point of seizure often is just a pivotal point in these circumstances, and you support them in a context, and that is the case in this matter as well. Because that stops the amalgamation of facts, the officer can look to support a finding of reasonable suspicion. So the flight would be off the table if the seizure occurred before the flight, unless it's deemed an intervening circumstance, another complication to this case. And I wanted to talk about that first because I think it's important. An important distinction between the foot stop case, like this matter, and the car vehicle case is that in the car vehicle stop case, although we use Terry and Terry stop authority to analogize that situation, it's different because there is no such thing as a consensual encounter in a car stop case. When the light bar comes on, you either pull over or you commit another crime, which is evading an arrest from the police. There is no such thing as the consensual encounter, which we know exists from Supreme Court precedent in the first place. Counsel, Judge Gould, with a question, please. Yes. Could you focus your argument and attention initially on the question that Judge Callahan was asking about, that is, was there a seizure when he was, you know, asked to stop? If he didn't stop, if he just turned his head but then kept going? Because if there's no seizure, if there's no seizure we never get to the other questions about intervening circumstances, I don't think. That's true. I'm just trying to get you to focus on the question that Judge Callahan was first raising because that's really the one of most concern to me also, like, was this guy seized in the circumstances? Your Honor, to focus right there on the point of seizure, the fact that it may be a consensual encounter is important to that dynamic because in cases that talk about whether there is a seizure, which now we're focusing on whether there was acquiescence to authority from the suspect, that cases do look at, in one distinguishing feature from the car stop case from the foot case, cases do look to was the person trying to communicate to the officer a lack of desire to engage in the encounter? And that's crystallized in this case because we have a finding from the magistrate court, unobjected to by the government, that when the officer told Mr. Syth to come over to his vehicle there was no reasonable suspicion. So Mr. Smith had the authority under the law to disregard that request. So what this case largely becomes about is when an individual tries to communicate to the officer that I do not wish to engage in an encounter with you, at what point can that communication become a seizure? Now it seems somewhat odd to say that, but if you look at the airport cases like Morgan v. Wushner and also a case from the Fourth Circuit that cited in your case, Hernandez, called Wilson, in that case they talk about just this issue. Both those cases occurred in an airport, but it involved a situation where the officer DEA or the investigating officers were trying to seize somebody and the person kept voicing a disinclination to engage in the encounter. And what the cases there, and in the Ninth Circuit case Fuentes talks about this a bit too, what the cases there talk about is that this, when a person voices clearly that they don't want to engage in an encounter and the officers persist in forcing it into an encounter, then that is a seizure. Let me ask you this though. What factual findings were made in this case regarding what the facts were? Oh yes, yet another complication to this matter. The magistrate court never made a specific factual finding as to which version of events to use. The officer's version of events as to whether a seizure occurred or Mr. Smith's version because he testified at the hearing. And it's very significant which version to look to because under the officer's version, this court would have a strong basis to say that Hernandez applies to that because Hernandez says that merely looking at the officer and uttering something briefly and then running away does not constitute a seizure. Contrast that with the facts as supplied by Smith which showed a lot more acquiescence and in fact put this case more into the negotiation of a consensual encounter parameters where Smith actually stops his progress, he's on the porch of his friend,  repeatedly asked at least three times, why are you trying to stop me? Why do I have to go to the police car? And the officer refused to answer, eventually reached for his weapon and then Smith runs. Under those... Go ahead. Go ahead. Well, it seems to me like a strange case where probably your client could walk away but can't run away. Like he can walk away fine but maybe he can't run away without generating suspicion. If he's seized first, then you've got the fruit of the poisonous tree type issue that even if he runs later, it may be a consequence of an initial unlawful seizure. But right at the outset, if he'd wanted to, could he have just told the police I'm not going to talk to you and walked away? Your Honor, I'm so gratified to hear that question because that is exactly really what this case boils down to. The government wants to articulate a rule here which is walk but don't run. Case law specifically says, Supreme Court case law, that you have a right not to engage in this encounter. Mr. Smith had a right not to engage in this encounter. The question is how do you do it? Do you have to be polite and nice about how you're not engaged in the encounter, say the right words, do the exact right thing, politely turn and walk away? Or do you have the right to be more veris... Perseverance. Perseverance, exactly. To state that you're disinclination in more aggressive terms. And in fact, when the officer appears to not listen to you and is going to seize you anyways, do you have the right to run away or do you have to walk? In a large way, that's what this case boils down to. And it seems somewhat interesting, a question, because the practicalities of it, if you think about it, seemed somewhat difficult. Like what is the officer supposed to do? And it's particularly difficult in the vehicle pursuit case where if somebody reasonably or rightly believes that the officer has no basis to pull him over, certainly they don't have a right to just keep driving and ignore him like you would on the street. But the law on the street is if you are right and the officer has no basis to stop you and you express a desire not to be stopped, you do in fact have that right. Or do you? After doing these cases after many years, I've seen this sort of situation erupt many times and I question whether a citizen does have that right. Every case that I've seen where a citizen, even in this case where it's clear that there was no reasonable suspicion for the stop, which is very clear in this case, even in those situations when the citizen tries to not engage in an encounter with law enforcement, it escalates because the officer wants to do it and forces the person to engage in the seizure. And then the officer and the government will use the factors that the person does not want to engage in the encounter against them. Do you want to save a minute for rebuttal? I do. Thank you very much. Thank you. Good morning. Good morning, Your Honors. Drew Smith. I represent the United States Attorney's Office for the District of Nevada. And I'd like to start, Your Honor, I think Your Honors have already hit on what we believe are the important issues in this case. But there's really three questions that this Court has to ask itself. First, can a person be seized if there never actually is a stop? Second, can a person be seized if there's sort of a stop, but they never submit to the officer's authority in a meaningful way? I ask those two together because, as Your Honors have already pointed out, there is a bit of vagueness to the ruling that was issued by the magistrate judge in this case. So what are, from your perspective, what are the facts that we have, what factual findings do we have that we have to defer to? Well, Your Honor, the factual findings of this case, as I mentioned, they're a bit vague. The magistrate judge really kind of lumps them together. He says, without making factual findings, he says there's the defendant's version of what happens and then there's the officer's version. And he says even under the defendant's version, which is obviously more favorable to the defendant, that there is no stop. He doesn't, he didn't find it necessary to make an actual finding of which version he was crediting as the operative facts. The magistrate says something to the effect of what, I wrote this down. He does say that he finds the officer's testimony to be generally credible. The magistrate concluded that although this testimony, if accepted, could be construed as initial compliance with the officer's instruction, it is also consistent with Smith positioning himself for flight. Correct. Correct, Your Honor. And he, the ruling itself, a common sense reading of the ruling requires that, that you see that the officer's testimony is generally credited as the operative facts. However, the court doesn't make that finding explicitly. Finding it unnecessary because even under the defendant's version, the magistrate found that there was not sufficient compliance for there to be a stop. Well, is this really a walk, don't run? I mean, because that, you know, it, it does seem, I know that our case law says that, that there's a lot of situations where a person is free to go. But I don't think I would feel free to go if an officer said that he wanted to talk to me. Well, Your Honor, in the case law, and interestingly, the one. And it doesn't seem to work out well for people that don't stay around and talk. Interestingly, Your Honor, one of the cases that the defendant cites in his brief, the Fuentes case, addresses this. It essentially says, this court said in Fuentes that people do have the, the right to not consent to encounters. They do have the right to, to tell officers that they don't want to talk to them. What they don't have the right to do is, in the face of questioning from officers, run away. That, if they do so, that establishes new reasonable suspicion or probable cause for the officers to go after them. That's what happened in this case. The magistrate, it's fairly clear in his ruling that if Mr. Smith, the defendant, had just stood there and said, I don't want to talk to you, he, we probably would not be here today. The, the officer thought he had been jaywalking. The magistrate said he didn't believe that we put on enough evidence to support that. So the, the, the evidence most likely would have been suppressed. That's not what happened in this case. The defendant never stopped walking, according to the officer's testimony, merely turned his head, yelled some expletives at the officer, and took off running. That's what we have in this case. So it's not even close. The Fuentes case that the defense, or that the defendant cites in his brief, is totally an opposite from this case. Fuentes was a consensual search where he tells, in an airport context, he tells the officers they can reach into his pocket. Once the officers reach in and find drugs in the pocket, he withdraws his consent and tries to pull away from the officers, doesn't get very far, and he's arrested. All right. If, if, from your perspective, if we accept the defendant's testimony, which was, what was the defendant's testimony about the encounter? The defendant's testimony, Your Honor, was that he had already made it across the street, that he had stopped at a friend's house. He was ringing the doorbell, trying to get access to the house. He was on this porch. And at that point, he noticed the officer. Even the defendant says, though, that on multiple times, he refused to, to listen to the officer, the officer's request. I believe even the defendant says at least three times he heard the officer say, come over here, and he refused to do so. That is why the magistrate judge said even under that finding, there wasn't sufficient submission to the officer's authority for there to actually be a stop. So it's your view that if you give the defendant, take the defendant's testimony as true, and all inferences that are, that go with that, there still was not a seizure? That, that is our, that is our position, Your Honor, and that's the position that we, that we articulated in our response, that certainly we don't believe there was a stop. But even if this Court were, were to agree with, were to make the factual determination that, that the defendant's testimony is the one to follow, we don't believe there's a stop in that case either. If the counsel, go ahead, Justice Kennedy. If we thought there was a seizure, is that, is, is that the, then do you lose? Absolutely not. That was actually the, the third issue that I was going to, to address with this Court. The, the third question I said this Court needed to ask itself. If this Court does find that there actually was a seizure in this case, then if the Court doesn't, the Court has to, has to concede that a court under Hood R.E.D., it compels this Court to find that the exclusionary rule doesn't apply. If it does find a stop, then this is where this Court has to look at its own precedent in Garcia. Garcia has been around for 35 years. Garcia determined that flight was a sufficient intervening event to purge taint of even an improper stop. Okay. Let me, I interrupted Judge Gold. What did you want to say, Judge Gold? Well, yeah. What I wanted to do was just focus still on whether there was a seizure. I want to make sure I get the government's view on this. As I understand it, if a person's not feel, if they don't feel free to leave, then they're seized. That's one of the main definitions of whether they're under arrest. So that usually when we say they're not under arrest, they feel free to leave. And that can be even when they go along with the police to some degree. Like in a case, an opinion I just filed recently called Red Lightning, where the guy goes, you know, to the police station and talks to them. But the panel still thought he was free to leave. So if you're free to leave as like a necessary condition of your being not yet seized, does it then mean that you can walk away but not run away? That's really what I, that's what I was going to ask you. To resolve this case, do we have to squarely address whether there's a walk but don't run rule? So you're free to leave so you can walk away. But if you run away, that gives reasonable suspicion so that you can be stopped. Your Honor, I don't believe that's necessary in this case. And because your question I think presupposes that the defendant at some time actually submitted to a stop. Under either finding in this case. I'm not assuming that. Assuming that he hasn't submitted to a stop. I'm sorry, I don't mean to cut you off. I'm assuming he is free to leave, that he hasn't been arrested. He's not in custody. He can leave if he wants. But then does he have to leave by walking but not leave by running? Well, and your Honor, here, first let me, let me say, again, I think by you even using the term leave, I think presupposes that he was ever there or that he ever stopped. That doesn't apply, I don't believe, in this case because even under the defendant's version, he never actually stops and talks to the officer. So I don't think it's a, there's a, the court has to go as far as saying walk or run. Okay. Well, let me say, then I withdraw the word leave. He wants to continue moving. Well. Does he have to continue moving? If he wants to be unrestrained, does he have to do it by walking and not running? Well, your Honor, the. The running, does the running mean that then they have grounds to stop him? The Supreme Court case law does, a ward law that was noted earlier, does say that running is enough to give you, the officer's reason to stop. Now, the word is somebody, there is case law as well saying that if a person comes across an officer and he says I just want to walk away and he's walking on his own, minding his own business, that that is okay. And if the officer actually impedes him from walking away, then that can be a problem. So in certain situations, it is true that a person, there is a distinction to be drawn between walking away and just taking off in full on flight. I don't believe that applies in this case, and I don't think that the court needs to go to that decision in order to reach its ruling in this case. The, this Court actually itself made, in Hernandez, actually astutely pointed out the problem with making a ruling like the one the defendant seeks today. They said it would not, this Court would not adopt a rule whereby momentary hesitation and then flight constituted submission of authority because such a rule would encourage suspects to flee after the slightest contact with police in order to discard evidence and yet still maintain Fourth Amendment protections. Do you want to wrap it up? Your time is up. Absolutely, Your Honor. Your Honor, all the, briefly, all that the government is asking here today is for this Court to rule consistent with what it's done for the past three decades. As I just mentioned, there are serious ramifications to this Court not, or reversing its belief that it articulated in Garcia 35 years ago. With that, Your Honor, we'll submit. Thank you for your argument. Just briefly, what crystallizes this case into the consensual encounter rubric of cases, and which distinguishes most of the authority relied upon by the government, is that in virtually all the authority that goes against me on this issue, there was a finding of reasonable suspicion before the interaction, before the law enforcement and the citizen occurred. Here, it is clear the magistrate found it in the fact sheet. I mean, this is an officer who thought he could pull over anybody walking on the street on Sunday morning. That's in the record. It's clear that he didn't have reasonable suspicion to stop this guy. Not my client. So the question becomes, in that situation, what are the terms of the negotiation of an encounter? And that's what distinguishes this case. And I would like to... You're not saying that a police officer can't simply walk up to somebody and start asking them questions, even though a reasonable person might feel that they weren't free to walk away. That is definitely true, Your Honor. And what this case is about is what is the citizen's response. What is true? That it's true that the officer has that right. Right. And it's not a seizure. It's not a seizure, but it can be, according to Morgan B. Wushner and some other cases that I've cited. If, in that discussion, may I speak to you? No, I don't want to. And the government, I mean, the law enforcement officer persists with that questioning, even though the person has clearly voiced that they don't want to be questioned. Then courts have found, well, that constitutes a seizure, because that persistent questioning is unlawful. Where did your client say he didn't want to be questioned? Three times he did. According to... Well, he said, no, why? Why do I have to go over there? Why me? What is this about? Well, that's different from saying, I don't want to. I don't want to stop. I don't want to answer any questions. He's saying, why did you stop me? Why do you want to ask me questions? Well, it becomes a question of how unequivocally the defendant's voicing or communication of lack of consent to engage in an encounter is. But, of course, Mr. Smith gave the ultimate evidence that he didn't want to engage in the encounter, because he ran away from it. So that unequivocally expressed his desire not to engage in the encounter. And the problem with this case is that the government wants to use that expression against him. And that is the constitutional right. What's wrong with that? There is a difference between, you know, why would you run away from a police officer? Because you're afraid of them. Because you live in a low-income neighborhood where law enforcement encounters are not always pleasant. There could be a lot of reasons for doing that. And you think the best way to avoid that is to start running? Well, there needs to be some... Who's about to draw a taser? That really gets to the meat of this problem here. I mean, there are practical problems. But the question is, you as a citizen, do you have the right to not engage in this encounter? And if you become afraid because the officer wants you to engage in the encounter, anyways, do you have the right to run away? That's an open question. I don't think people are very clear about that. Hasn't the Supreme Court said that running away gives grounds for suspicion so that everything turns on whether the guy was seized before he ran away or not? Well, that is true, Your Honor. But another distinction I would draw is in cases like war law, the running and the running away, those kind of considerations happen before any interaction between the citizen and the police. And that's significant because once this interaction occurs, this suspicionless interaction, then we get thrown into the realm of what are the rights and what rights do a citizen have under the consensual encounter doctrine, which is, in my estimation, very unclear. All right. Thank you for your argument. This matter will now stand submitted.
judges: Korman, Gould, Callahan